IN THE UNITED STATES DISTRICT COURT
FOR THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

FRANK V. POLLARA GROUP LLC )
And FRANK C. POLLARA, individually, ) No. 9-60
)
    Plaintiffs,
    v.

OCEAN VIEW INVESTMENT HOLDING,
LLC, f/k/a SOUTHGATE CROSSING
INVESTMENTS, LLC, OMEI GROUP LLC,
LUCY CHENG, and MATT DUBOIS,

    Defendants.

## OPINION AND ORDER

## SYNOPSIS

In this civil action, Plaintiffs, who are contractors, seek payment for work relating to a real estate development on property owned by Southgate Crossing, LLC ("Southgate"), a non-party to this action.

To summarize the allegations of the Second Amended Complaint, Defendant OMEI Group LLC ("OMEI") was the operating manager of Southgate. Southgate was formed by its members, including OMEI. Defendant Chen was a principal of OMEI, and an investor in Ocean View (and thus in Southgate), who acted as an agent for Ocean View. Defendant Dubois was likewise an investor in the latter two entities, and also acted as Ocean View's agent. Southgate Crossing, LLC is distinct from Southgate Crossing Investments, LLC ("SCI"), which loaned money to Southgate for the subject project.[1]

---

[1] SCI has changed its name to Ocean View Investment Holding, LLC. For purposes of clarity, I will refer to the entities by their former names in this Opinion. Moreover, it appears that Ocean View is the current owner of the property, following foreclosure.

1

Plaintiffs entered into a Contractor Agreement with Southgate to perform certain work on the property, primarily to create an entrance.[2] Plaintiffs allege that Defendants, who were investors and lenders for the project, falsely led them to believe that all necessary permits were in place and made false promises of eventual payment. Plaintiffs further allege that they relied on those representations both prior and subsequent to their execution of a contract with Southgate. Then, when it became clear that permits were still needed, Defendants asked and authorized Plaintiffs to obtain the permits, and eventually to do other work in addition to that related to the permitting– such as landscaping, road repair, etc. – upon promise of eventual payment.

Plaintiffs bring claims for quantum meruit (Count I), unjust enrichment (Count II), and intentional or negligent misrepresentations or fraud (Count III). Before the Court is Defendants' Motion for Summary Judgment on all Counts of the Second Amended Complaint. For the following reasons, the Motion will be denied.

## OPINION

### I. APPLICABLE STANDARDS

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. <u>International Raw Materials, Ltd. V. Stauffer Chem. Co</u>., 898 F. 2d 946, 949 (3d Cir. 1990). The moving party

---

[2] The Contractor Agreement reads "Southgate Crossings LLC," which was crossed out and replaced with the handwritten notation, "Southgate Development Group, LLC." Again for clarity, I refer to the contracting party as Southgate. As Defendants point out, none of them were parties to the contract, so the precise identity of the contracting party is not material to their Motion.

bears the burden of demonstrating the absence of any genuine issues of material fact. United States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004).

Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. v. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986). The sum of the affirmative evidence to be presented by the non-moving party must be such that a reasonable jury could find in its favor; it cannot simply reiterate unsupported assertions, conclusory allegations, or suspicious beliefs. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).

## II. DEFENDANTS' MOTION

First, I address Defendants' argument that because a contract exists, Plaintiffs are barred from asserting equitable claims of quantum meruit and unjust enrichment.  At issue here is Plaintiffs' work in obtaining the Sewer Permit and the Group Dwelling Permit.   I address Counts I and II collectively, because "[u]njust enrichment … is [essentially] a synonym for quantum meruit," lacking substantive distinction.  Delta Elec. v. Biggs, No. 6-104, 2011 U.S. Dist. LEXIS 107805, at *8 n. 10 (D.V.I. Sept. 23, 2011).  Quantum meruit is the remedy for a quasi-contract under a theory of unjust enrichment; it is not a free-standing legal theory.  See Terrace v. Williams, 52 V.I. 225 (S. Ct. V.I. 2009).

As Defendants correctly assert, an express written contract precludes a contracting party from bringing equitable claims. Although Plaintiffs argue that the permitting work fell outside the scope of the contract,[3] Defendants' contentions must be rejected on more elementary

---

[3] Plaintiffs suggest, by affidavit, that their contractual permit responsibilities related solely to the entrance work represented in the contract.  The other permits, which they were led to believe were already in place but which they ultimately obtained, related to the development as a whole.  Accordingly, Plaintiffs suggest that in the industry, the contractual provision requiring him to obtain "all permits necessary for the work to be performed " would not apply

grounds. This doctrine is not triggered by the mere existence, in a vacuum, of a contract. Instead, absent circumstances not addressed by Defendants in this case, it applies to parties in contractual privity. See Biggs, 2011 U.S. Dist. LEXIS 107805, at *10. The reasons underlying the equitable bar are as follows:

> [The rule] embodies the principle that parties in contractual privity … are not entitled to the remedies available under a judicially-imposed quasi contract. In other words, the parties are not entitled to restitution based upon the doctrine of unjust enrichment, because the terms of their agreement, express and implied, define their respective rights, duties, and expectations.

Id. at *10.

In other words, where an express contract defines the parameters of the parties' duties, the parties may avail themselves of contract remedies; absent such a contract, the parties cannot avail themselves of contract remedies, and equitable intervention becomes appropriate. Cf. In re Marcus Lee Assocs., L.P., 422 B.R. 21 (Bankr. E.D. Pa. 2009).

In this case, Defendants do not assert that they are in contractual privity with Plaintiffs by virtue of the entrance/gate agreement. To the contrary, they affirmatively disown the written agreement, arguing that the contracting parties are not defendants to this action, and that Plaintiffs have not sued "either of the two parties with which they contracted." Indeed, in their affidavits, they disavow taking action on behalf of the contracting non-parties. Accordingly, accepting these representations, Plaintiffs cannot sue them pursuant to the written contract; the contract does not define these parties' respective rights and duties. Therefore, I will not apply the bar to preclude Plaintiffs from invoking equity in this litigation.

---

to the development permits, but only to his work as a contractor on the entrance. Thus, Plaintiffs' contention is that their work for the permits at issue was done as a "developer" rather than a "contractor," and was not addressed by the contract. While I do not deny judgment on these grounds, the present record does not allow for a determination regarding whether the subject permit work falls within the scope of the language in the Contractor Agreement.

Defendants further suggest that Plaintiffs' claims are barred by the so-called "gist of the action" doctrine. However, as with the equitable bar,"[t]hat doctrine, which bars tort claims that sound in contract, does not…apply to parties 'not in contractual privity with the plaintiff.'" Forcine Concrete & Constr. Co. v. Manning Equip. Sales & Servs., No. 8-2926, 2010 U.S. Dist. LEXIS 59196, at *10 (E.D. Pa. June 14, 2010); Carpenters Combined Funds v. Klingman, No. 10-63, 2010 U.S. Dist. LEXIS 32718 (W.D. Pa. Mar. 15, 2010).   Again, Defendants protest that they did not have any legal relationship with Plaintiffs.   Thus, the doctrine does not bar Plaintiffs' claims.

In addition, Defendants argue, on more general grounds, that Plaintiffs cannot rely on equity to evade their contract with the non-parties to this action.[4]   Defendants cite to DCB Construction Co., Inc. v. Central City Development Co., 965 P. 2d 115 (Colo. 1998), in which the Court found that a property owner was not responsible in equity for benefits received when a contractor improved the property pursuant to a contract with the tenant.[5]   In finding that the test for unjust enrichment had not been met, the court stated as follows:

> "[The owner] did not agree to pay for the improvements, and should not be forced into a quasi-contractual relationship with [the contractor].  It is not enough that [owner] owns the improved building and that Tenant breached its contract to pay for those improvements.  There m[u]st be more."

Id. at 121.

DCB, of course, is not binding on this Court.  Even if it were, the present case is clearly distinguishable from DCB -- here, there is "more."  Unlike in DCB, Plaintiffs in this case present

---

[4] Defendant also cites to case law involving third-party beneficiaries.  It has not been established that Defendant falls into this category, and that case law is unpersuasive.

[5] In that case, the court did not find that the extant contract barred the restitution claim; instead, it analyzed the test for unjust enrichment, set out in the Restatement of Restitution 1, and found that it had not been met.   Thus, DCB does not stand for the proposition that an extant contract between a party and non-party to the action bars equitable claims.

5

evidence that Defendants were actively involved in the subject project, were actively involved with Plaintiffs, and made a variety of representations relating to the work. Under applicable standards, I cannot find as a matter of law that the unjust enrichment "test" referred to in DCB is unfulfilled. The facts before me simply do not command the same result as in that case.

Next, Defendants argue that Plaintiffs cannot meet the essential elements of an unjust enrichment or quantum meruit claim. In particular, they contend that Plaintiffs did not provide services to any Defendant, and no Defendant was enriched by Plaintiffs' work, because no Defendant owns the property where the work occurred, and no permit was applied for or issued in any Defendant's name. In turn, Plaintiffs point to the fact that Defendants were investors in and lenders for the project on the property, who must have recognized that the permits increased the value of the property; that they intended to let one of the contracting corporations "die" in an effort to protect their investments; and that they reassured Plaintiffs that payment would be forthcoming.

It would be incongruous in this case to entirely disregard the overlapping relationships and financial interests between the Defendants and non-party entities and individuals. Indeed, a lender may have the benefit of possessing an interest in a property improved by the contractor's efforts. Cf. In re Gebco Inv. Corp., 641 F.2d 143, 148 (3d Cir. 1981). An investor, by definition, has devoted money to something that offers the possibility of profit. Thus, the benefit of an improved property might accrue to an investor – particularly an investor in the lending entity. While Defendants seem to argue that only a property's owner can be enriched by improvements on that property, they proffer no authority to support that proposition. It is either undisputed, or Plaintiff has produced evidence that might reasonably suggest, that Ocean View was the mortgage holder, that Southgate's Operating Agreement identifies OMEI as a member

and Defendant Cheng as a manager and agent, and that the individual Defendants were investors related to the project. On the record and argument presented, I cannot find as a matter of law that they were not enriched by Plaintiffs' work.[6]

Finally, Defendants seek judgment on Plaintiffs' fraud claim, on various grounds. For the reasons discussed supra, in the absence of a contract between the parties, I reject their "gist of the action" argument. In addition, Defendants contend that their affidavits establish that they made no representations to Plaintiff, or that they did not intend Plaintiffs to rely on any such representations. Plaintiffs, however, produce testimony suggesting, for example, that Kima Merrick acted at the direction of Defendant Cheng; that Defendant Cheng and others represented that Defendant Cheng directed the project; and that Merrick made representations about the existence of permits. Plaintiffs also produce testimony that each individual Defendant made representations reasonably viewed as relating to funding and the possibility of payment. Further, Plaintiff has produced evidence that Defendants represented themselves as acting on behalf of various entities, including Ocean View and OMEI. The contradictory testimony raises genuine issues of material fact regarding whether Defendants made representations to Plaintiffs, and the content thereof. Because of that dispute, and all of the circumstances surrounding the project, I also cannot find, as a matter of law, that Plaintiffs' reliance on any purported representations was either unintended or unjustified. The facts presented in the record, preclude the entry of judgment in Defendants' favor.[7]

---

[6] I reject Defendant's brief statement that Plaintiffs' claim fails because there are no "monies" to return. Generally speaking, the measure of restitution is the amount of enrichment received. Biggs, 2011 U.S. Dist. LEXIS 107805, at **15-16 n. 16. I find no authority requiring that the enrichment be in strictly monetary form.

[7] An intentional misrepresentation claim may lie, for example, when there is evidence to support an inference that a lender intended to mislead a contractor, and induce the contractor to continue work on a project, even though funds to pay were not available. Martik Bros., Inc. v. Huntington Nat'l Bank, 356 Fed. Appx. 602 (3d Cir. 2009).

7

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be denied. An appropriate Order follows.

## ORDER OF COURT

AND NOW, this 10th day of January, 2013, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion for Summary Judgment [288] is DENIED.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court